McFarland, J.
{¶ 1} Denny W. Blanton, Jr., appeals the judgment entry on sentence filed November 9, 2016 in the Adams County Court of Common Pleas. Blanton was convicted by a jury on three counts: (1) kidnapping, in violation of R.C. 2905.01(B) (2) ; (2) felonious assault, in violation of R.C. 2903.11(A) (1) ; and (3) assault, in violation of *9 R.C. 2903.13(A). On appeal, Blanton asserts eight assignments of error. However, having fully reviewed the record, we find no merit to the arguments raised in the eight assignments of error. Accordingly, we overrule Appellant's assignments of error and affirm the judgment of the trial court.
FACTUAL AND PROCEDURAL BACKGROUND
{¶ 2} Appellant's convictions arise subsequent to his involvement in jail fights which occurred at the Adams County Jail during the month of June 2016. Appellee has indicated in its brief that Appellee agrees with the statement of the case and statement of facts as set forth in Appellant's brief. Therefore, we relate the facts as set forth in Appellant's brief.
{¶ 3} Appellant, an 18-year-old male, was confined in cell block E4 of the Adams County Jail in June 2016, awaiting trial in another matter, along with inmates Gary Lunsford, Robert Long, Mark Mefford, Josh Gray, Zachary McKee, and Devon Michaels. The security and surveillance system at the Adams County Jail consists of a "catwalk," a hallway between the exterior wall of the building and the housing units; a video camera at each end of the catwalk to capture images of activities in the main area of the cell block; and a "call box." The inmates engaged in "rough-housing" and "horseplay," which Appellant attributes to a lack of supervision by jail personnel. The inmates harassed each other with "towel-snapping" and organized "fighting" for entertainment.
{¶ 4} In mid-June, Lieutenant Micah Poe, the jail administrator, began noticing that the inmates were coming out of the cell with injuries. Inmates Gary Lunsford, Josh Gray, and Mark Mefford were observed with bruising. Lunsford was noted to have visible injuries to his head, stomach, and back, so he was referred for treatment at Adams County Hospital, and an investigation of the matter was initiated.
{¶ 5} After taking statements from the inmates, Poe recommended the filing of criminal charges against McKee, Michaels, and Appellant. On July 8, 2016, an Adams County Grand Jury indicted Appellant for several felony offenses allegedly occurring during this period of time. The indictment contained five counts which alleged as follows:
Count 1: On or about June 5 and June 17, 2016 in Adams County Ohio Denny Blanton Jr. did by force, threat or deception remove Gary Lunsford from the place where the other person was found, or restrained the liberty of Gary Lunsford with purpose to terrorize, or inflict serious physical harm on the said Gary Lunsford, in violation of R.C. 2905.01(A) (3), Kidnapping, a felony of the first degree;
Count 2: On or about and between June 18 and June 19, 2016 in Adams County, Ohio Denny Blanton Jr. did by force, threat or deception knowingly, under circumstances creating a substantial risk of physical harm to Gary Lunsford, restrain Lunsford of his liberty, in violation of R.C. 2905.01(B)(2), Kidnapping, a felony of the first degree;
Count 3: On or about June 5 and June 18, 2016 in Adams County, Ohio Denny Blanton Jr. did by force, threat or deception remove Josh Gray from the place where the other person was found, or restrain the liberty of Josh Gray with purpose to terrorize, or inflict serious physical harm on the said Josh Gray, in violation of R.C. 2905.01(A) (3), Kidnapping, a felony of the first degree;
Count 4: On or about and between June 17 and June 18, 2016 in Adams County, Ohio Denny Blanton Jr. did knowingly cause serious physical harm *10 to Gary Lunsford, in violation of R.C. 2903.11(A)(1), Felonious Assault, a felony of the second degree; and,
Count 5: On or about and between June 5 and June 18, 2016 in Adams County, Ohio Denny Blanton Jr. did knowingly cause or attempt to cause physical harm to Josh Gray, in violation of R.C. 2903.13(A), Assault, a misdemeanor of the first degree.
{¶ 6} Appellant was arraigned, entered pleas of not guilty, and the matter was placed on the court's trial docket. On October 27, 2016, Appellant filed a motion to dismiss the indictment due to the Adams County Sheriff's Office's failure to preserve video footage from the jail surveillance system between the dates of June 5, 2016 to June 18, 2016. The matter came on for hearing on October 31, 2016. The trial court did not actually receive testimony regarding the circumstances surrounding the deletion of the video footage, but made its ruling based upon the representations and arguments of counsel. Appellant did not attend the hearing on the motion.
{¶ 7} Appellant ultimately proceeded to a three-day jury trial beginning on November 7, 2016. The State presented its evidence, largely through the testimony of victim Gary Lunsford, Lieutenant Micah Poe, other inmates Robert Long and Mark Mefford, and Dr. Richard Durbin of the Adams County Medical Center. The defense presented evidence via the testimony of Deputy Chelsea Phelps.
{¶ 8} At the close of trial, the trial court granted Appellant's Crim.R. 29 motion for acquittal as to Count 3 which alleged the kidnapping of Josh Gray. The jury found Appellant not guilty of Count 1, which alleged the kidnapping of Gary Lunsford during the June 5 to June 17 time frame. The jury found Appellant guilty of the three remaining counts.
{¶ 9} Appellant was sentenced to consecutive 6-year prison terms on the kidnapping and felonious assault counts, and a concurrent 6-month jail term on the misdemeanor assault count. Prior to Appellant's trial in this case, he had been convicted in Adams County of kidnapping and rape, both counts containing violent sexual predator specifications.[1] The trial court ordered that Appellant's sentence to be served consecutively to the previously imposed sentences in the earlier case.
{¶ 10} This timely appeal followed. Additional facts will be set forth, where pertinent.
ASSIGNMENTS OF ERROR
"I. DEFENDANT-APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO SATISFY THE REQUIREMENTS OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
II. DEFENDANT-APPELLANT'S CONVICTION FOR KIDNAPPING IS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO SATISFY THE REQUIREMENTS OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
III. THE TRIAL COURT APPLIED AN INCORRECT LEGAL STANDARD AND/OR ABUSED ITS DISCRETION, AND VIOLATED DEFENDANT-APPELLANT'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND A *11 RELIABLE JURY VERDICT, WHEN IT DENIED HIS REQUEST FOR A JURY INSTRUCTION ON SIMPLE ASSAULT AS A LESSER-INCLUDED OFFENSE OF FELONIOUS ASSAULT.
IV. AN INCOMPLETE AND MISLEADING COMPLICITY INSTRUCTION VIOLATED THE TRIAL COURT'S STATUTORY DUTY UNDER R.C. 2945.11 TO CHARGE THE JURY AS TO ALL MATTERS NECESSARY TO RENDER A FAIR VERDICT AND DEPRIVED DEFENDNAT-APPELLANT OF HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND A RELIABLE JURY DETERMINATION AS TO EACH ELEMENT OF THE OFFENSES OF CONVICTION.
V. THE TRIAL COURT'S ADJUDICATION OF DEFENDANT-APPELLANTS MOTION TO DISMISS (FOR FAILURE TO PRESERVE EVIDENCE) FOLLOWING A HEARING CONDUCTED IN HIS ABSENCE AND WITHOUT FORMAL TESTIMONY ON THE DISPUTED ISSUES OF FACT VIOLATED HIS RIGHTS UNDER CRIM.R. 43, THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
VI. THE TRIAL COURT'S REFUSAL TO PERMIT DEFENSE COUNSEL TO CROSS-EXAMINE THE LEAD INVESTIGATOR ABOUT HIS FAILURE TO PRESERVE THE JAIL VIDEO FOOTAGE VIOLATED DEFENDANT-APPELLANT'S RIGHT OF CONFRONTATION UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.
VII. DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, DUE TO MULTIPLE INSTANCES OF DEFICIENT PERFORMANCE.
VIII. THE TRIAL COURT UNLAWFULLY ORDERED THAT THE PRISON TERM IMPOSED IN THIS CASE BE SERVED CONSECUTIVELY TO THE PRISON TERMS IMPOSED IN A PRIOR CASE IN ORDER TO PUNISH DEFENDANT-APPELLANT FOR REFUSING A PLEA BARGAIN AND EXERCISING HIS CONSTITUTIONAL RIGHT TO TRIAL."
ASSIGNMENT OF ERROR ONE
{¶ 11} Under the first assignment of error, Appellant challenges the sufficiency of the evidence to support his conviction for felonious assault. Appellant points out the crime of felonious assault requires proof that he knowingly caused serious physical harm to Gary Lunsford. Appellant argues his conviction is not supported by sufficient evidence beyond a reasonable doubt to prove he acted either as a principal offender or as collective participant, given the video evidence and testimony regarding the timing of Lunsford's being "sucker punched" by one of the other inmates.
STANDARD OF REVIEW
{¶ 12} A claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence is legally sufficient to support the *12 verdict as a matter of law. State v. Deckard, 2017-Ohio-8469, 100 N.E.3d 53, ¶ 29. State v. Dunn, 4th Dist. Jackson No. 15CA1, 2017-Ohio-518, 2017 WL 587317, ¶ 13 ; State v. Wickersham, 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, 2015 WL 4113316, ¶ 22 ; State v. Thompkins, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. Thompkins, syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Jenks, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." Thompkins, 78 Ohio St.3d at 390, 678 N.E.2d 541 (Cook, J., concurring).
{¶ 13} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. Deckard , supra , at ¶ 30 ; Dunn , supra , at ¶ 14 ; Wickersham , supra , at ¶ 23 ; State v. Hill, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996) ; State v. Grant , 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. State v. Tibbetts, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001) ; State v. Treesh, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).
LEGAL ANALYSIS
{¶ 14} R.C. 2903.11(A) (1), felonious assault, provides that "No person shall knowingly * * * cause serious physical harm to another." R.C. 2901.22(B) defines "knowingly" as follows:
"A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."
"Serious physical harm" is defined under R.C. 2901.01(A)(5)(c), (d), and (e) as including harm that produces "temporary, substantial incapacity", "temporary, serious disfigurement", or "acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." State v. Adams, 2016-Ohio-7772, 84 N.E.3d 155, (4th Dist.) at ¶ 25, quoting State v. Scott, 4th Dist. Washington No. 15CA2, 2015-Ohio-4170, 2015 WL 5833945, ¶ 23. Here, the trial court instructed the jury as to the above definitions in almost verbatim language.
{¶ 15} At trial, the jury saw surveillance footage from the jail's video system which showed the attack on Gary Lunsford by Appellant and the two other inmates. Lunsford identified his attackers as he testified and the tape was shown. In support of his argument hereunder, Appellant points to an approximate 2-4 minute interval between the time when Lunsford sustained a "sucker punch" by another inmate, Zach Mckee, and when Appellant "entered" into the fray. Appellant argues this evidence eliminates him as the principal offender of the infliction of the blow that allegedly resulted in the serious physical harm to Lunsford. Appellant also argues that the testimony is insufficient to *13 permit a rational trier of fact to find beyond a reasonable doubt that he acted collectively to cause serious physical harm to Lunsford.
{¶ 16} Based upon our review of the videotape and the testimony, however, we disagree. As the State played the videotape, Gary Lunsford identified himself and several other inmates: Robert Long, Mark Mefford, Zach McKee, Devon Michaels, and Appellant. Mark Mefford testified that during the time frame between June 5, 2016 and June 20, 2016, fights were organized in the cell by Appellant. Specifically, Mefford testified: "Blanton, he was the main spoke of it, he kept saying, I want to see some wrestling, I want to see some action in here, and it was for their amusement." Mefford testified the fighting occurred "almost every night to every other night." Specifically, Mefford testified:
Q: Okay, with regard to the organized fighting, would you call that organized fighting that took place?
A: That's what it escalated to, yes.
Q: Who in the cell was responsible for that?
A: Most of it was Mr. Blanton.
Q: What was his role in that?
A: Pretty much what they call egging it on?
* * *
A: More or less that it was all his idea.
The Court: Who is he and his?
A: Mr. Blanton.
{¶ 17} Gary Lunsford also testified these activities were going on daily during the two weeks prior to his being injured. And, Lunsford also identified Appellant as the instigator of the wrestling and fights. Lunsford testified "if you didn't fight, especially if you didn't do what they said they was going to beat you up." He testified "they" referred to Zack McKee, Devon Michaels, and Appellant.[2]
{¶ 18} Regarding the June 18, 2016 altercation, Lunsford testified that McKee, Michaels, and Appellant "made him wrestle" Josh Gray. If he refused, his alternative was to fight the others. On that day, when Lunsford and Gray wrestled and one was pinned, Appellant would restart the match. Lunsford testified that at one point, McKee "sucker punched" him. While Lunsford was lying on the ground, Appellant was hitting him. However, Lunsford testified he did not recall Appellant hitting him because he was unconscious. He was incapacitated and unable to move.
{¶ 19} Inmate Mark Mefford's testimony also described the June 18, 2016 incident:
A: That night, Mr. Blanton got the idea that they were going to throw, he said we were going to throw the mats on the floor and see a wrestling match. And when he put the mats on the floor he said that he, Mr. Blanton, said that he wanted Zack McKee and Josh Gray to wrestle for them for their amusement.
Q: Was it Zack McKee or Gary Lunsford?
A: Gary Lunsford and Josh Gray.
* * *
Q: So how long did you observe that wrestling match?
A: Approximately about 20 to 30 minutes.
* * *
A: Josh and Gary Lunsford. They ended up stopping and Josh Gray goes over *14 to the sink to get himself a drink and he is worn out and Gary he was about ready to get up, and then before he initially gets up Mr. McKee upper cuts him in the mouth knocking him back, and then he started repeatedly hitting him several more times. * * * Gary Lunsford, when he was still on the floor. Well, this lasted for approximately maybe 2-3 minutes and Mr. McKee and Devon Michaels hitting him. And Gary he unconscious for like a few minutes, two at the most. At that time he was on the floor.
Q: Who is he?
A: Mr. Gary Lunsford and at the time he was on the floor Mr. Blanton proceeded to come over and he started hitting him. * * *
Q: My question is, was he hitting him with his hands, was he kicking him with his foot, what part of Mr. Blanton's body was he using to?
A: Fists and feet.
Q: Okay. How did you know that Gary Lunsford was unconscious?
A: Because he wasn't moving.
{¶ 20} Another inmate, Robert Long, also described the June 18, 2016 incident: "Zack McKee and Devon Michaels [was] beating Gary Lunsford, and then after that Blanton went over and started punching on Lunsford." Long also described Lunsford's becoming unconscious: "I seen he was wrapped up in a ball with his hands over his face and then he was kicked in the back of his head and then his arms went limp. He was out for a few seconds and then he come back to." Regarding the brief cessation of fighting, long testified, afterwards, he saw Appellant punch Lunsford but did not observe Appellant kicking him.
{¶ 21} The above testimony given by inmates Mefford, Long, and the victim, Inmate Lunsford, demonstrates that Appellant set into motion the sequence of events which resulted in serious physical harm to Lunsford. We find the facts and circumstances indicate Appellant's awareness of the probability that his conduct would result in serious physical harm to Lunsford. Appellant is responsible for the natural and foreseeable consequences that follow in the ordinary course of events unfolding as a result of Appellant's actions as instigator of the June 18, 2016 altercation. Furthermore, the facts and circumstances demonstrate Appellant was an active participant in the actual physical violence.
{¶ 22} We find an earlier decision in our district, State v. Johnson , 4th Dist. Scioto No. 13CA3580, 2014-Ohio-4443, 2014 WL 4977584, involving an altercation in a prison, to be instructive. There, Johnson claimed that despite the fact that he hit his victim in the face, the evidence was clear that the injuries to his victim's shoulder and head were not from Johnson's punch, but from a fall to the ground or possibly from the unrest that ensued after prison guards intervened in the prison fight. Johnson argued that the evidence failed to demonstrate that he knowingly caused serious physical harm to his victim, Officer Meier. Johnson pointed out while he may have knowingly caused physical harm to the officer in starting the incident by punching him in the head, it was the officer who escalated the incident by attempting to throw Johnson to the floor.
{¶ 23} We were not convinced by this argument. Citing the trial court's instructions as to the essential elements of felonious assault, in Johnson we observed at ¶ 14 that the court's instructions included "knowledge," "causation," including:
"The Defendant's responsibility is not limited to the immediate or most obvious result of the Defendant's act. The Defendant *15 is also responsible for the natural and foreseeable consequences, or results, that follow in the ordinary course of events from his actions. There may be more than one cause of the victim's injury. However, if the Defendant's act was one cause, the existence of other causes is not a defense to this case. The test of foreseeability is not whether the Defendant should have foreseen the injury in its precise form or as to a specific person. The test is whether a reasonably prudent person, in light of all the circumstances, would have anticipated that serious physical harm was likely to result to anyone from the performance of the act."
{¶ 24} Johnson argued that he could not have reasonably foreseen that after he punched Meier in the head several times that Meier would grab him and take him down to the ground. Thus, Meier's actions constituted an unforeseen intervening act that caused the serious physical harm suffered by Meier. The appellate court reasoned, however: " 'it is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.' " Johnson , supra , at ¶ 18, quoting State v. Conway, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 143. (Internal citations omitted.) "[T]he jury, unable to enter the mind of another, is required to consider common-sense, causal probabilities in considering whether the defendant acted 'knowingly.' " State v. Kelly, 11th Dist. Portage No. 2010-P-0049, 2012-Ohio-523, 2012 WL 439668, ¶ 23."
{¶ 25} We observed it was "unquestioned" that Johnson set into motion the sequence of events which resulted in serious physical harm to the officer. Furthermore, the jury could have reasonably inferred from those punches themselves that Johnson had caused serious physical harm to Meier resulting in his closed-head injury and recurring, debilitating headaches. Id. at ¶ 19.[3] (Emphasis added.) We reasoned:
"More importantly, Johnson could have reasonably foreseen that his unprovoked inmate attack on a prison guard would result in the guard he assaulted and other guards following prison protocol by attempting to restrain him by taking him down to the ground. Meier's injuries were consequently reasonably foreseeable to Johnson and they would not have occurred if Johnson had not started the altercation by punching Meier."
{¶ 26} The Johnson court went on to explain at ¶ 21 :
"For the causation element, we noted the following in Smith at ¶ 24-26: Courts generally treat the issue of legal causation in the criminal context similarly to that in tort cases because the situations are closely analogous. See, generally, LaFave Substantive Criminal Law (2003), 2nd Ed., Section 6.4(c). When dealing with claims of intervening causation, the proper analysis starts with a determination of whether the intervening act was a mere coincidence or alternatively, a response to the accused's prior conduct. Id. at 6.4(f). * * * An intervening act is a response to the prior acts of the defendant where it involves reaction to the condition created by the defendant.* * * [T]he law will impose a less exacting standard of legal *16 causation where the intervening cause is a response rather than a coincidence. A coincidence will break the chain of legal causation if it was unforeseeable."
{¶ 27} Even if Meier's actions constituted intervening acts, they were a reasonable, foreseeable response to the repeated punches by Johnson to his head rather than a mere coincidence. Because Meier's actions in attempting to restrain and neutralize Johnson were neither abnormal nor unforeseeable, they did not break the chain of causation so as to relieve Johnson from criminal liability for felonious assault related to the serious physical injuries incurred by Meier. Id. at ¶ 22.
{¶ 28} We held at ¶ 23, "Although Meier's injuries may not have been the "immediate or most obvious result" of Johnson's initial punches to Meier's head, they were the "natural and foreseeable consequences" of the actions that followed "in the ordinary course of events." Therefore, we held after viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence for a rational trier of fact to find that the essential elements of felonious assault had been proven beyond a reasonable doubt. "The uncontroverted evidence was sufficient for the jury to determine that Johnson knowingly caused serious physical harm to Meier during his prison attack." Id. at ¶ 24.
{¶ 29} Likewise, we hold that after viewing the evidence in light most favorable to the prosecution, there was sufficient evidence for a rational trier of fact to find that the essential elements of felonious assault had been proven beyond a reasonable doubt. Given the testimony that Appellant was the instigator, and "egged on" the fighting, it is unquestioned that Appellant, like Johnson, set into motion the sequence of events which resulted in serious physical harm to Lunsford. Like Johnson, Appellant could have reasonably foreseen that his creating the violent environment in the days leading up to the 18th and insisting that the men fight on the 18th, would result in the other inmates punching and kicking Lunsford. The other inmates' actions constituted reasonable and foreseeable responses to Appellant's initial actions in instigating the right.
{¶ 30} Another instructive case is In re Miller , 11th Dist. Ashtabula No. 2000-A-0014, 2002-Ohio-3360, 2002 WL 1400544. Here, Miller, a juvenile convicted of felonious assault at a party, stressed the fact that the testimony establishes several other people were kicking the victim in the head before he became involved in the fight. The appellate court noted it was impossible to sort out which blow to the victim's head caused what amount of damage and observed at ¶ 31 :
"[As to the persons kicking the victim] Those actions caused serious physical harm. Assuming, for purposes of this point, that they did, a party cannot then jump on top of the victim bargaining only for a "regular" assault by hitting the victim in a manner that may not, under normal circumstances, cause serious physical harm. If, in fact, appellant did not enter the melee until the victim had already suffered serious physical harm, his actions are all the more inculpatory. Harm heaped on top of serious physical harm must itself be considered serious physical harm even if under different circumstances it may not have risen to that level. It is impossible to sort out which blow to the victim's head caused what amount of damage. Those that assaulted him all contributed jointly in the harm the victim suffered."
{¶ 31} Here, Appellant's argument assumes that the only serious physical harm Lunsford suffered was a "possible concussion" after the sucker punch which rendered him, via eyewitness and admittedly *17 not expert opinion, unconscious. We disagree. The surveillance footage demonstrates Lunsford was obviously weakened and had fallen down when Blanton administered repeated blows to Lunsford's head. Mefford described Lunsford's injuries as follows:
Q: After seeing Mr. Blanton, Mr. McKee and Mr. Michaels strike Gary did Gary have any injuries?
A: Yes, Ma'am. * * *
A: I seen blood coming out of [Gary's] nose and stuff and several lacerations around his face and head area.
{¶ 32} Lunsford was the taken to the Adams County Hospital. At trial, he identified State's exhibits 1, 2, 3, 4, 5, and 7, photographs of his injuries which depicted two black eyes; bruising of his eyes, ear, neck, stomach, and back; a busted lip; and a gash on his head. Dr. Richard Durbin, the emergency room doctor who treated Lunsford at Adams County Regional Medical Center on June 21, 2016, testified Lunsford had "obvious" injuries to his face, and gave a history of being "knocked unconscious." Based on the subjective history, Dr. Durbin ordered a CT scan of the head and x-rays of the left elbow and chest. He testified there were no fractures seen.
{¶ 33} On cross-examination, Dr. Durbin testified Appellant was discharged in "fair" condition back to the jail with a diagnosis of soft tissue injuries to the head, face, left lateral chest wall and left elbow. He was advised to follow up with the physician at the jail. On redirect, Dr. Durbin testified he "believed" that Lunsford sustained a concussion.
{¶ 34} Even if Appellant was not responsible for the blow which may or may not have rendered Lunsford unconscious and caused a "possible concussion," we find sufficient evidence that Appellant caused serious physical harm. In State v. Adams, 2016-Ohio-7772, 84 N.E.3d 155 (4th Dist.), we observed:
"The degree of harm that rises to the level of 'serious' physical harm is not an exact science, particularly when the definition includes such terms as 'substantial,' 'temporary,' 'acute,' and 'prolonged.' " Id. at ¶ 26, quoting State v. Mango, 8th Dist. Cuyahoga No. 103146, 2016-Ohio-2935, 2016 WL 2756627, ¶ 33. (Internal citations omitted.) The statute does not define "substantial suffering"; instead, the trier-of-fact must determine its existence from the facts of each particular case. State v. Bell, 1989 WL 10372, (Feb. 7, 1989), *2. (Internal citations omitted.) "Physical harm to persons" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3) State v. Henry, 8th Dist. Cuyahoga No. 10002634, 2016-Ohio-692, 2016 WL 762573, ¶ 40.
{¶ 35} The Henry court observed that serious physical harm has been found where a victim sustains a bloody cut and/or significant swelling to the face because this is sufficient to establish serious physical harm in that it constitutes "temporary, serious disfigurement." Id. at ¶ 42. Courts have also determined that "serious physical harm" exists " 'where the injuries caused the victim to seek medical treatment.' " Adams, supra, at ¶ 30, quoting Scott, supra, at ¶ 3. (Internal citations omitted.)
{¶ 36} Within his sufficiency argument, Appellant is quick to discredit the testimony of Lunsford and the other "criminals." We are mindful, however, " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' "
*18 State v. Reyes-Rosales , 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, 2016 WL 3216241, ¶ 17, quoting State v. West, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, 2014 WL 1875931, ¶ 23. "A sufficiency assignment of error challenges the legal adequacy of the State's prima facie case, not its rational persuasiveness." State v. Oldaker, 4th Dist. Meigs No. 16CA3, 2017-Ohio-1201, 2017 WL 1193818, ¶ 41, quoting State v. Koon, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, 2016 WL 527289, ¶ 17. "That limited review does not intrude on the jury's role 'to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " Musacchio v. United States, 84 U.S.L.W. 4077, --- U.S. ----, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016), quoting Jackson at 319, 443 U.S. 307, 99 S.Ct. 2781.
{¶ 37} Any doubts one might have as to the credibility of the witnesses' testimony is dispelled by the surveillance footage which demonstrates Appellant restarting the wrestling match between Lunsford and Gray, and then repeatedly and viciously striking Lunsford's head later when he is lying on the floor. The jury further had the photographic depiction of Lunsford's serious, temporary disfigurement to his face and body.
{¶ 38} We find any rational trier of fact could have found proven beyond reasonable doubt that Appellant acted knowingly and created serious physical harm to Lunsford. For the foregoing reasons, we find no merit to Appellant's first assignment of error. It is hereby overruled.
ASSIGNMENT OF ERROR TWO
{¶ 39} Appellant also challenges the sufficiency of the evidence to support his conviction for Count 2, kidnapping, under R.C. 2905.01(B)(2). Appellant argues from a legal, factual, or "logical" perspective, it is impossible for an inmate to commit kidnapping with respect to another inmate. Furthermore, even if the evidence demonstrated Appellant was able to deprive Lunsford of his "freedom of choice," Appellant should have been prosecuted under the more specific coercion statute, instead of under the general kidnapping statute.
STANDARD OF REVIEW
{¶ 40} The sufficiency-of-the-evidence standard of review has been set forth fully above.
LEGAL ANALYSIS
{¶ 41} Appellant directs us to the essential elements of the kidnapping statute. R.C. 2905.01(B)(2) provides:
"No person, by force, threat, or deception, * * * shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim * * *: (2) Restrain another of the other person's liberty."
{¶ 42} Appellant argues that it was a legal impossibility for him to have restrained Lunsford's liberty. Appellant points to Lunsford's testimony that during June 2016 he was confined in the Adams County Jail to serve a six-month sentence for a DUI. Lunsford admitted on cross-examination that his restriction of movement was due to his jail sentence. Appellant cites State v. Nolan , 141 Ohio St.3d 454, 2014-Ohio-4800, 25 N.E.3d 1016 and Liming v. Damos, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, to support his argument that a person may not be convicted for any offense under circumstances that constitute a logical impossibility. However, we disagree.
{¶ 43} In Graewe v. Wilkerson, 4th Dist. Scioto No. 95CA2388, 1997 WL 161816 (Mar. 28, 1997), we recognized the principle that prisoners do not shed all Constitutional rights at the prison gate. Id. at *2. For example, prisoners have a "fundamental *19 and substantive liberty interest in uncensored mail * * *." White v. Morris, 69 Ohio App.3d 90, 590 N.E.2d 57, 59 (4th Dist.1990). In Estelle v. Gamble , 429 U.S. 97, 104-105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court of the United States recognized, pursuant to the Eighth Amendment, "the government's obligation to provide medical care for those whom it is punishing by incarceration." Id. See State v. Hutchings , 8th Dist. Cuyahoga No. 110735, 2014-Ohio-4675, 2014 WL 5387111, ¶ 18.
{¶ 44} Inmates in Ohio jails have various rights, subject to reasonable restrictions. Ohio Administrative Code Section 5120:1-8-01(A)(10), reception and release provides that jail shall implement policies and procedures as follows:
"The jail shall develop, implement, maintain, and update as necessary a set of generally applicable inmate rules. The rules shall be accessible to all inmates and shall provide information regarding confinement including sleeping hours, meals, mail, work assignments, telephone access, visitation, correspondence, medical care, hygiene, laundry, recreation, programs, rules of conduct, disciplinary procedures and grievance procedures."
{¶ 45} As is mandated by federal and state law, jail inmates and prisoners do not lose all liberties by the fact of their incarceration in a county jail or state prison facility. They do not lose the rights such as receiving mail, accessing telephones, taking showers, receiving visitors, and receiving medical care. Nothing in the research indicates Lunsford lost the right to move freely about the jail cell, absent some violation of conduct or pursuant to a disciplinary procedure, or to contact the jailer and request medical care.
{¶ 46} The testimony at trial demonstrated that Lunsford was within Appellant's power and beyond immediate help, as well as compelled to stay out of the view of jail personnel. We find Appellant's "impossibility" argument has no applicability to these facts and thus, without merit.[4]
{¶ 47} At trial, the prosecutors argued that Appellant threatened Lunsford and thereby took his "freedom of choice" to seek protection or medical assistance. Appellant argues the State's evidence demonstrated, at best, an effort by Appellant to restrict Lunsford's freedom of choice and therefore, should have been prosecuted for violation of the coercion statute, a misdemeanor of the second degree. Appellant asserts that the State improperly elevated, to first degree felony level, conduct that the General Assembly intended to punish less seriously as a misdemeanor. R.C. 2905.12 (A)(1), coercion, provides that "No person, with purpose to coerce another into taking or refraining from action concerning which the other person has a legal freedom of choice, shall * * * [t]hreaten to commit any offense." However, we are not persuaded.
{¶ 48} Lunsford testified he was unable to get medical help for two days after the attack because McKee, Michaels, and Appellant told him he was not allowed to "hit the call box." They told him if he tried to call for help, he would "get the same treatment again." Lunsford specifically testified Appellant told him, "don't move or your (sic.) going to get it again." Because he didn't want to get attacked again, Lunsford *20 covered his head whenever a jailer walked through so he wouldn't be seen. When the inmates' food trays were served, he would lay on his bunk covered up. Lunsford testified either McKee, Michaels, or Appellant would get his tray and hand it to him so Lunsford's injuries would not be discovered and no one would get into trouble. Lunsford's injuries were finally noticed when the jailer ordered him to bring his tray to her, and she saw the marks on his face and body.
{¶ 49} Lunsford's testimony was corroborated by Mark Mefford, who testified that on June 18 and 19, 2016 when the food was delivered to their cell, Lunsford did not get up because "[h]e was too scared and he was told not to get up because of the laceration on his face," by "McKee, Blanton, and Michaels." And, on cross-examination, when asked who was in charge of the cell, Mefford replied: "It seemed to be that it was all three, Mr. McKee, Mr. Blanton, and Mr. Michaels."
{¶ 50} When interpreting statutes and their application, an appellate court conducts a de novo review, without deference to the trial court's determination. State v. Sufronko , 105 Ohio App.3d 504, 664 N.E.2d 596 (4th Dist.1995). R.C. 1.51 states:
"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."
{¶ 51} Principles of statutory construction require that specific statutory provisions prevail over conflicting general statutes. Sufronko,supra, at 506, 664 N.E.2d 596 ; State v. Volpe, 38 Ohio St.3d 191, 193, 527 N.E.2d 818, 820-821 (1988). Where there is no manifest legislative intent that a general provision of the Revised Code prevails over a special provision, the special provision takes precedence. Id. at paragraph one of the syllabus. (Internal citations omitted.)
{¶ 52} In determining the applicability of R.C. 1.51, the court must first ascertain whether the two statutes of kidnapping and coercion present an irreconcilable conflict. Such conflict arises when the same conduct is punishable by different penalties in different statutes. See State v. Chippendale, 52 Ohio St.3d 118, 556 N.E.2d 1134 (1990) ; Volpe, supra, 38 Ohio St.3d at 193, 527 N.E.2d at 820-821. (Internal citations omitted.)
{¶ 53} Appellant asserts that restraining Lunsford's freedom to seek medical help, if it occurred, represents conduct punishable by two separate statutes with different penalties. Under the general statute of kidnapping, R.C. 2905.01(B)(2), a conviction results in a first-degree felony. Under the special provision of coercion, R.C. 2905.12(A)(1), a conviction results in a misdemeanor. Therefore, appellant contends that the statutes are definitely in conflict and the special provision of coercion must prevail. We disagree.
{¶ 54} To be considered irreconcilable, the statutes must first prohibit the same conduct, specifically the conduct of which appellant was convicted. Appellant would have this court conclude that threatening Lunsford directly or indirectly is the same conduct constituting coercion and kidnapping.
{¶ 55} If appellant had committed coercion by threatening Lunsford in some manner in order to prevent him from seeking medical attention, separate conduct still exists that results in more than a violation of coercion. This separate conduct *21 is the fact that Appellant's threat also created a substantial risk of physical harm to Lunsford.
{¶ 56} Appellant is correct in asserting that inherently, kidnapping includes the act of coercion. However, acts committed under the coercion statute do not necessarily violate the kidnapping statute. A person coerced into refraining from action he or she is legally permitted to do may face a substantial risk of personal or professional harm, but not necessarily a substantial risk of physical harm. Violations of the two statutes result from different conduct. The statutes prohibit separate and distinct offenses and therefore, the statutes are reconcilable.
{¶ 57} Appellee chose to prosecute Appellant on the conduct of kidnapping and not for the conduct of coercion. "The mere fact that appellant's conduct violates more than one statute does not force the state to prosecute him under the lesser statute." Sufronko , supra, at 509, 664 N.E.2d 596 ; State v. Cooper, 66 Ohio App.3d 551, 553, 585 N.E.2d 868, 870 (1990).
{¶ 58} Accordingly, we find that kidnapping and coercion are reconcilable and therefore, the R.C. 1.51 interpretation rule does not apply. As such, Appellant's conviction for kidnapping is proper.
{¶ 59} And, while Appellant cites a lack of credibility as to the testimony of inmates Lunsford and Mefford, we are again mindful that generally, the weight and credibility of evidence are to be determined by the trier of fact. Oldaker , supra , at ¶ 43. See State v. Kirkland , 140 Ohio St.3d 73, 15 N.E.3d 818, 2014-Ohio-1966, at ¶ 132. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. Id. ; State v. Koon, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, 2016 WL 527289, at ¶ 18.
{¶ 60} For the foregoing reasons, after reviewing the evidence and inferences reasonably drawn therefrom in a light most favorable to the prosecution, any rational trier of fact could have found proven beyond a reasonable doubt that Appellant kidnapped Lunsford by restraining his movement in the jail cell and restraining his freedom to seek medical treatment from the jail personnel.
{¶ 61} We also find our recent decision in State v. Oldaker, supra, to be applicable as to both Appellant's sufficiency arguments regarding his felonious assault and kidnapping convictions. Oldaker was charged and convicted of two counts of kidnapping after he held his victim at gunpoint and forced him to ride with Oldaker and at least one other person to a garage in order to repossess a car that had been sold to the victim. The victim, Brandon Cremeans, was tricked into the vehicle by his cousin, Michael Cremeans, and assaulted by another person, Fisher, prior to Oldaker's entry into the situation. Oldaker challenged the sufficiency of the evidence convicting him, arguing that because he did not restrain Brandon, did not deceive or trick Brandon into going to the house where the physical harm occurred, and played no role in Fisher's felonious assault of Brandon. However, we found Oldaker's arguments meritless. We reasoned:
"Both Brandon and Michael Cremeans testified that Oldaker held Brandon at gunpoint and forced him to ride with them from Fisher's residence to the garage so that they could repossess the car that Fisher had sold to Brandon. And Deputy Sheriff Huff testified that on that day, Oldaker called him and told him that he "had Brandon." This constituted sufficient evidence that Oldaker, *22 by threat of force, knowingly, under circumstances that created a substantial risk of physical harm to Brandon, removed him from the place where he was found-the Fisher residence-and restrained him of his liberty. No evidence of deceit or a trick on his part was required to convict him of kidnapping because R.C. 2905.01(B) specifies that the offense may be committed by "force, threat, or deception." (Emphasis added.) And the mere fact that Oldaker may not have been involved in the felonious assault does not mean that he did not act "under circumstances that create a substantial risk of serious physical harm to the victim." He threatened Oldaker with a gun and although he had reason to believe that Brandon had been seriously injured, he continued to restrain him and deprive him of the opportunity to receive the immediate medical attention that his eye injury needed. After viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of kidnapping proven beyond a reasonable doubt."
{¶ 62} In this case, the jury apparently believed the State's witnesses, despite the fact that all but Lieutenant Poe and Dr. Durbin had criminal backgrounds. They must have found credible the testimony that Appellant's actions restrained Lunsford of his liberty and acted in a manner which created a substantial risk of serious physical harm to him. For the foregoing reasons, Appellant's second assignment of error has no merit and is hereby overruled.
ASSIGNMENT OF ERROR THREE
{¶ 63} Appellant next contends the trial court applied an incorrect legal standard, or in the alternative abused its discretion, when it denied his request for an instruction on simple assault as a lesser-included offense of felonious assault.
STANDARD OF REVIEW
{¶ 64} "When the indictment, information, or complaint charges an offense including degrees, or if lesser offenses are included within the offense charged, the defendant may be found not guilty of the degree charged but guilty of an inferior degree thereof, or of a lesser included offense." State v. McFadden, 4th Dist. Washington No. 14CA5, 2014-Ohio-5294, 2014 WL 6680689, ¶ 4, quoting State v. Maynard, 4th Dist. Washington No. 10CA43, 2012-Ohio-786, 2012 WL 628196, ¶ 25, quoting Crim.R. 31(C). See also R.C. 2945.74. "In reviewing a trial court's decision regarding whether to give a jury instruction on a lesser-included offense, we employ a two-tiered analysis. McFadden supra, at ¶ 5, quoting Maynard , supra , at ¶ 26. First, we must determine whether the offense for which the instruction is requested is a lesser-included offense of the charged offense." Id. (Citation omitted.). State v. Smith, 4th Dist. Scioto No. 09CA3321, 2010-Ohio-5953, 2010 WL 4949620, ¶ 23. A criminal offense may be a lesser-included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. State v. Barnes , 94 Ohio St.3d 21, 26-27, 759 N.E.2d 1240 (2002), citing State v. Deem, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph three of the syllabus. Once it is determined that a charge constitutes a lesser-included offense of another charged offense, we then examine whether the record contains evidentiary support upon which a jury could reasonably acquit the defendant of the *23 greater offense and convict him on the lesser offense. McFadden supra , at ¶ 6 ; Maynard , supra , at ¶ 28. The trial court has discretion in determining whether the record contains sufficient evidentiary support to warrant a jury instruction on the lesser-included offense, and we will not reverse that determination absent an abuse of discretion. Maynard, supra, citing Smith , supra , at ¶ 24. An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. Maynard , supra , at ¶ 29, citing State v. Adams, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).
LEGAL ANALYSIS
{¶ 65} Various appellate districts have held that assault, which is governed by R.C. 2903.13, is a lesser-included offense of felonious assault, which is governed by R.C. 2903.11. See State v. Rogers , 8th Dist. Cuyahoga No. 62014, 1993 WL 58590 (Mar. 4, 1993) ; State v. Hunter, 2nd Dist. Champaign No. 2004CA5, 2005-Ohio-443, 2005 WL 281159 ; State v. Brundage , 1st Dist. Hamilton No. C-030632, 2004-Ohio-6436, 2004 WL 2757605, ¶ 15 ; State v. Cartagena, 10th Dist. Franklin No. 02AP-459, 2002-Ohio-7355, 2002 WL 31894888, ¶ 30. Appellant argues the evidence at trial reasonably supports both acquittal on the crime of felonious assault and conviction upon the lesser included offense of simple assault. He argues omission of the assault instruction exposed Appellant to a substantial risk the jury would convict him of felonious assault rather than acquit him out right and was therefore prejudicial.
{¶ 66} However, simply because an offense is a lesser-included offense of the crime with which a defendant stands charged does not result in the conclusion that the trial court must give the lesser-included offense instruction. State v. Shadoan, 4th Dist. Adams No. 03CA764, 2004-Ohio-1756, 2004 WL 736587, ¶ 74 ; See State v. Thomas , 40 Ohio St.3d 213, 216, 533 N.E.2d 286 (1988). Rather, a trial court must instruct a jury regarding a lesser-included offense when the evidence presented at trial would support it. Id. An instruction is not warranted, however, every time "some evidence" is presented on a lesser-included offense. State v. Grube, 2013-Ohio-692, 987 N.E.2d 287, ¶ 74 ; See State v. Shane , 63 Ohio St.3d 630, 632-33, 590 N.E.2d 272 (1992). "To require an instruction * * * every time 'some evidence,' however minute, is presented going to a lesser-included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." Grube, supra, at ¶ 76, quoting Shane, 63 Ohio St.3d at 633, 590 N.E.2d 272. (Citation omitted.)
{¶ 67} Furthermore, in McFadden, supra, at ¶ 9, we observed:
" Crim.R. 30(A) states:
'At the close of evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The Court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.' "
{¶ 68} We further observed:
"In State v. Fanning, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982), paragraph two of the syllabus, the Supreme Court of Ohio held:
*24 '[A] requested special jury instruction must be in writing and made at the close of the evidence, or at such earlier time as the court reasonably directs to be proper.' Several appellate courts have found that Fanning applies to requests for jury instructions involving lesser included offenses. See, State v. Lemley, 4th Dist. Gallia No. 95CA24, 1996 WL 718264, *3."
{¶ 69} In Lemley, we found that Fanning requires a written request. We further concluded that the trial court did not err when it denied the oral request to instruct the jury on the lesser-included offense. Based on that precedent, we found the trial courts in McFadden and Lemley did not abuse their discretion in denying the appellants' oral requests for lesser-included offense instructions.
{¶ 70} In McFadden , at ¶ 11, we held, based on our finding that the trial court did not err in denying the oral request for the lesser-included offense instruction, we did not need to address his argument that the record contained evidentiary support upon which the jury could reasonably have acquitted him of the greater offense. Similarly, we are not required to address Appellant's argument. However, despite Appellant's argument that the evidence supporting his felonious assault conviction is weak, based upon our review, we find the evidence supporting appellant's conviction would not support an acquittal of that crime. As such, Appellant's assignment is overruled and the judgment of the trial court is affirmed.
ASSIGNMENT OF ERROR FOUR
{¶ 71} Here, Appellant challenges the trial court's complicity instruction on the grounds that it was incomplete and misleading. Appellant contends the trial court erred by failing to instruct the jury that liability under the complicity statute requires proof of aiding and abetting and the same culpable mental state for the principal crime. At the outset, however, we observe Appellant was not charged with a violation of the complicity statute.
STANDARD OF REVIEW
{¶ 72} Our review concerning whether jury instructions correctly state the law is de novo. State v. Chandler, 4th Dist. Highland No. 14CA11, 2014-Ohio-5215, 2014 WL 6612914, ¶ 13 ; State v. Brown , 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, 2009 WL 3236206, ¶ 34. However, reversible error should not be predicated upon one phrase or one sentence in a jury charge; instead, a reviewing court must consider the jury charge in its entirety. State v. Porter, 14 Ohio St.2d 10, 13, 235 N.E.2d 520 (1968). Moreover, if an instruction correctly states the law, its precise wording and format are within the trial court's discretion. Brown at ¶ 34.
{¶ 73} Furthermore, we observe that Appellant did not object to the trial court's complicity instruction. Where there exists a failure to object on the record, a plain error analysis is appropriate. State v. Lawwill , 8th Dist. Cuyahoga No. 88251, 2007-Ohio-2627, 2007 WL 1559563, ¶ 62. State v. Franklin, 97 Ohio St.3d 1, 776 N.E.2d 26, 2002-Ohio-5304. "[F]or a reviewing court to find plain error: (1) there must be an error, i.e., 'a deviation from a legal rule;' (2) the error must be plain, i.e., 'an "obvious" defect in the trial proceedings;' and (3) the error must have affected 'substantial rights,' i.e., it must have affected the outcome of the proceedings." Deckard , supra , at ¶ 24 ; (Internal citations omitted.) See also State v. Barnes, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). The Supreme Court of Ohio has admonished courts that notice of plain error under Crim.R. 52(B) is to be taken "with the utmost caution, under exceptional *25 circumstances and only to prevent a manifest miscarriage of justice." Id. , quoting State v. Long , 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), at paragraph three of the syllabus.
LEGAL ANALYSIS
{¶ 74} R.C. 2923.03 governs complicity and provides, in pertinent part, as follows: "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) Aid or abet another in committing the offense[.]" However, as indicated, Appellant was not charged under the complicity statute. At closing, the trial court instructed the jury as follows:
"Complicity. The State of Ohio has presented a theory that the defendant acted in complicity with others in the commission of felonious assault and kidnapping. A person who is complicit (sic) with another in the commission of a criminal offense is regarded as guilty if he or she personally performs every act constituting the offense. This is true even if he or she did not personally perform every act constituting the offense or was not physically present at the time the offense was committed."
{¶ 75} Ordinarily, reversible error does not consist of misstatements or ambiguities in only part of the instructions. When considering a jury instruction, the court must remember that the purpose of jury instructions is "to clarify the issues and the jury's position in the case." Bahm v. Pittsburgh & Lake Erie Rd. Co., 6 Ohio St.2d 192, 194, 217 N.E.2d 217, 219 (1966).
{¶ 76} In State v. Oliver, 7th Dist. Mahoning No. 12CA212, 2015-Ohio-2684, 2015 WL 3999198, the appellant contended that the trial court erred in instructing the jury on complicity. Oliver appealed multiple convictions, including one for participation in a gang. Oliver pointed out that he was charged solely as a principal offender and there was no evidence in the record to support a complicity instruction. Oliver further maintained that, over his objection, the trial court gave a second complicity instruction which only served to aggravate the problem.
{¶ 77} The appellate court noted that complicity is among the offenses that can be used to establish a pattern of gang activity, which is an element of participation in a criminal gang. The State argued that the court mentioned complicity merely while defining a term found within a charged offense. The State noted that the trial court clarified to the jury that Oliver had been charged as a principal offender and the State clearly argued that Appellant was the principal offender in its closing argument.
{¶ 78} In Oliver , while providing jury instructions, the court defined the offense of "participation in a criminal gang" and further defined several terms found within the definition, including the term "complicity." The trial court stated: "[t]he defendant is charged with complicity in the commission of the aforementioned crimes." The trial court then defined complicity. After the trial court provided the jury instructions, the judge met with both counsel in chambers to discuss the jury instructions that had just been given. The prosecutor brought up the fact that they had given the complicity instruction without telling the jurors that Oliver had been charged as a principal, but in the alternative, he could be charged as a complicitor. Both the State and the defense requested that the definition of complicity be taken out of the instructions before being handed to the jurors.
{¶ 79} However, the trial court determined that the instruction would not be removed and decided to give another instruction *26 to clarify that Appellant had been charged as a principal but, in the alternative, the jury could consider him as a complicitor. The defense objected and stated that the complicity instruction should have either been stricken or left as is, even though he had objected to the instruction. The jury was brought back into the courtroom and the court clarified the issue of complicity by stating:
"And the issue of complicity, this Defendant, Christian Oliver, is charged as a principal offender. In all offenses alleged in the indictment, he's charged as a principal offender, and as an alternative to a principal offender, he may be considered a complicitor for purposes of complicity."
{¶ 80} The appellate court found that while the complicity instructions were somewhat confusing, Oliver had neither alleged nor shown prejudice. Because Oliver was unable to demonstrate prejudice, he could not show that reversible error occurred. Based upon our review of the record, we cannot say that the trial court's possibly misleading complicity instruction caused prejudicial error.
{¶ 81} The comment to Ohio Jury Instructions, Vol. II, Title V, Criminal Subject Matter Instructions states: "If the defendant is charged with the principal offense and the evidence would support a theory that he/she was complicit, use this instruction":
"1. The state of Ohio has presented a theory that the defendant acted in complicity with the principal offender in the commission of (insert name of offense[s] ). A person who is complicit with another in the commission of a criminal offense is regarded as guilty as if he/she personally performed every act constituting the offense. This is true even if he/she did not personally perform every act constituting the offense or was not physically present at the time the offense was committed.
2. Before you can find the defendant guilty of complicity in the commission of (insert name of offense[s] ), you must find beyond a reasonable doubt, that on or about the __________ day of __________, 20 __________ in __________ County (other jurisdiction), Ohio, the defendant (insert applicable culpable mental state if one is required for the commission of the principal offense)."
{¶ 82} Appellant contends that the instruction should have included the definition of "aiding and abetting," and that it should have included the culpable mental statute for the principal crime. The trial court gave the first paragraph of the model instruction almost verbatim. We do not find the instruction given here to be an incorrect statement of the law, but an incomplete one. Despite the lack of a second paragraph, we do not find the incomplete construction rose to the level of prejudicialnot to pursue every possible error.
{¶ 83} Here, the instruction conformed to the evidence at trial. While Appellant was charged as the principal offender, at no time did the trial court or the parties refer to him as such. Furthermore, the surveillance footage and testimony established that Appellant both acted not only as an instigator of the violence, a principal offender, but also as a complicitor who contributed to the violence which reigned in the atmosphere on E4 and who joined in the beating of Lunsford.
{¶ 84} And, while the trial court did not define the burden of proof, date, jurisdiction, venue, and culpable mental state as to an actual charge of complicity, the trial court had previously defined those terms as to the felonious assault and kidnapping counts. Given the surveillance footage, pictorial evidence, and testimony of the witnesses, *27 we find the incomplete jury instruction did not rise to the level of plain error and change the outcome of the trial.
{¶ 85} Based upon the foregoing, we find the trial court did not err with regard to the provision of the complicity jury instructions. As such, the fourth assignment of error is without merit and is hereby overruled.
ASSIGNMENT OF ERROR FIVE
{¶ 86} Appellant's counsel filed a pretrial motion to dismiss the indictment due to the failure of the State to preserve all of the video footage from the jail surveillance system for the time frame of the offenses alleged in the indictment. The hearing on the motion to dismiss was conducted in Appellant's absence. In assignment of error number five, Appellant contends the prosecutor focused on the importance of the surveillance footage at trial, but the court deprived him of his constitutional and procedural rights when it denied his motion without receiving testimony from him on the disputed issues.
STANDARD OF REVIEW
{¶ 87} In State v. Gerald, 4th Dist. Scioto No. 12CA3519, 2014-Ohio-3629, 2014 WL 4177102, ¶ 15, we cited an earlier decision, State v. Lupardus, 4th Dist. Washington No. 08CA31, 2008-Ohio-5960, 2008 WL 4917518, ¶ 8, where we stated with respect to the standard of review to be applied when reviewing a trial court's denial of a motion to dismiss on the ground that the State failed to preserve evidence:
" 'We review de novo a trial court's decision involving a motion to dismiss on the ground that the state failed to preserve exculpatory evidence.' (Cites omitted.) State v. Sneed , 4th Dist. Lawrence No. 06CA18, 2007-Ohio-853 [2007 WL 613704], ¶ 19." But see State v. Fox , 4th Dist. Ross No. 11CA3302, 2012-Ohio-4805, 985 N.E.2d 532, ¶ 22 (declining to follow the reasoning in Lupardus employing a de novo review and instead employing a "hybrid standard of review that appellate courts apply to suppression motions and motions to dismiss on the basis of a violation of a defendant's speedy trial right[.]")[5]
LEGAL ANALYSIS
{¶ 88} A criminal defendant's due process right to a fair trial is violated when the prosecution withholds materially exculpatory evidence. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ; State v. Geeslin, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 7 ; State v. Johnston , 39 Ohio St.3d 48, 60, 529 N.E.2d 898 (1988). Fox , supra , at ¶ 25. To determine if a defendant's alleged due process rights are violated, courts characterize lost or destroyed evidence as (1) "materially exculpatory" or (2) "potentially useful." State v. Gerald , supra , at ¶ 15 ; Evidence is materially exculpatory " 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " Johnston, supra, 39 Ohio St.3d at 61, 529 N.E.2d 898, quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Fox , supra , at ¶ 25. "The Brady test is stringent" and thus, " '[t]he mere possibility that an item of *28 undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.' " Fox, supra, quoting State v. Jackson, 57 Ohio St.3d 29, 33, 565 N.E.2d 549 (1991), quoting United States v. Agurs, 427 U.S. 97, 109-110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Accord Arizona v. Youngblood, 488 U.S. 51, 56, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), fn. 1 ; State v. Rivas, 121 Ohio St.3d 469, 2009-Ohio-1354, 905 N.E.2d 618, ¶ 14 (stating that speculation is not sufficient to establish that withheld evidence is material). Whether evidence is materially exculpatory is a question of law. See, e.g. , Geeslin at ¶¶ 12-13 (not specifically setting forth standard of review but seemingly reviewing materially exculpatory question as a matter of law). Ordinarily, a defendant bears the burden to prove that withheld evidence is materially exculpatory. Fox at ¶ 26 ; Rivas at ¶ 14 ; Lupardus at ¶ 20. When, however, a defendant specifically requests a particular piece of evidence and that evidence is subsequently lost or destroyed, the burden shifts to the state to show that the evidence was not materially exculpatory. Lupardus at ¶ 21. (Internal citations omitted.) The burden does not shift to the state if the defendant makes only a general request for discovery. Lupardus at ¶ 22. Instead, for the burden to shift to the state, the defendant must have made a specific request regarding the particular piece of evidence. Lupardus at ¶ 22. Thus, when "evidence is destroyed pursuant to routine procedures before any request for it has been made, it is not the State's burden to show that the evidence was not exculpatory, but rather Defendant's burden to show that it was exculpatory." State v. Terry, 2nd Dist. Greene No. 04CA63, 2004-Ohio-7257, 2004 WL 3561243, ¶ 15.
{¶ 89} However, "[u]nless a defendant can show that the state acted in bad faith, the state's failure to preserve potentially useful evidence does not violate a defendant's due process rights." Gerald , supra , ¶ 17, quoting Geeslin, supra, syllabus, following Arizona v. Youngblood, supra. " 'The term "bad faith" generally implies something more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or [ill] will partaking of the nature of fraud. It also embraces the actual intent to mislead or deceive another." Gerald , supra , at ¶ 18, quoting State v. Buhrman (Sept. 12, 1997), 2nd Dist. Greene No. 96 CA 145, 1997 WL 566154, unreported (citations omitted).' [ State v. Christian, 2nd Dist. Montgomery No. 17824, 1999 WL 1206651 (Dec. 17, 1999).]" State v. Barron, 2nd Dist. Greene No. 10CA28, 2011-Ohio-2425, 2011 WL 1936104, ¶ 17.
{¶ 90} Here, we first consider who bears the burden to show the surveillance footage Appellant requested was materially exculpatory. We find, Appellant, not the State, bears that burden. Here, the State did not fail to preserve the videotape after appellant specifically requested the evidence. On October 6, 2016, the trial court conducted a final pretrial hearing. Trial was scheduled for November 7, 2016. On the record, counsel for both parties advised the court that discovery had been received. Defense counsel specifically acknowledged receipt of the jail video evidence.
{¶ 91} The trial court also inquired of counsel whether or not there were pending motions. Defense counsel advised there were none; however, on October 14, 2016, defense counsel filed a subpoena for additional surveillance footage, and on October 27, 2016 defense counsel filed a motion to *29 dismiss. The motion to dismiss hearing was heard on October 31, 2016.
{¶ 92} At the motion hearing, which arguably should be referenced as a pretrial conference in chambers because no testimony was taken and the court made his ruling on the motion based upon the representations of counsel, defense counsel pointed out the jail was under constant 24-hour surveillance. He pointed out the surveillance video obtained in discovery showed only 157 minutes of footage related to the alleged felonious assault on June 18, 2016, and nothing before or after. Defense counsel argued as he prepared for trial, he realized there must be video footage of the alleged kidnapping which occurred afterwards. At that point, he issued a subpoena for the alleged materially exculpatory evidence.
{¶ 93} At the October 31, 2016 conference, the State described the surveillance footage provided in discovery as being limited to June 18, 2016, 157 minutes in "mixed matched order." The State represented that the surveillance footage as evidence of the felonious assault occurring on the 18th was provided to them on June 20, 2016, and that they did not further investigate until June 24, 2016. However, once they determined to pursue kidnapping charges, the video footage was no longer available. The State represented that the video surveillance system which records is "one tape that erases after six days and starts recording over top of it."
{¶ 94} The above facts demonstrate that the burden did not shift to the State, to prove that the withheld evidence was materially exculpatory, because the defendant made only a general request for discovery earlier in the proceedings. By the time Appellant made a specific request, on October 14, 2016, the surveillance footage was no longer available, in accordance with the routine procedures of the jail and the surveillance system.
{¶ 95} We next consider whether this additionally requested surveillance footage was material exculpatory or potentially useful and, if the latter, was it not provided as a matter of bad faith on the part of the State. On appeal, defense counsel has argued the requested surveillance footage was materially exculpatory as relates to the kidnapping count. At the October 31, 2016 conference, defense counsel argued that as to the alleged kidnapping, when Lunsford was allegedly not allowed to show himself to the jailer or accept his own food tray, the 157 minutes provided demonstrated that was not true because he was up walking around and out of his bunk on multiple occasions after the assault. The trial court inquired "It's going to show that he did go up and get his own tray?" Defense counsel replied "He did or did not, you know." Defense counsel also argued: "The video is going to show one of two things, either that they did commit the crime, or they did not commit the crime. It has to be on there, they are under surveillance." Counsel, at the hearing and on appeal, only speculates as to what the requested surveillance footage may have shown and in accordance with Rivas, supra, such speculation is not sufficient to establish materiality.
{¶ 96} The trial court ultimately ruled that there was no suggestion that the alleged discarded video evidence was materially exculpatory, or that potentially useful evidence was destroyed in bad faith. We agree with the trial court's ruling. In our view, defense counsel's argument then and on appeal is based on pure speculation. Therefore, Appellant has failed to carry his burden to show that the requested surveillance footage was materially exculpatory.
*30 {¶ 97} Further, the record reveals Appellant made his own argument as to the materiality of the requested surveillance footage. At sentencing, Appellant disclosed that he had personal knowledge of the exculpatory nature of the discarded video footage and bad faith on the part of the investigator in failing to preserve it. Appellant informed the trial court as follows:
"* * * I'd like to tell everyone in this courtroom that Lieutenant Poe did commit perjury on the stand. He showed me video of the assault I committed on Mr. Lunsford. It was not at the angle as we saw in this trial. It was video from the other camera in which Poe said only showed the catwalk. Poe also testified that during an investigation he saves all the video to review for a long period of time. * * * Lieutenant Poe of Adams County Ohio Jail did knowingly destroy evidence, whether he believed it or not. Whether he believed it was necessary or not, the fact that the prosecutor said on record this was a continued event and we have not one witness who was there that is not a criminal. Nor do we have evidence of involvement of mine being that of destruction of video. Lieutenant Poe deleted video that proved Gary was not knocked out. Because like Dr. Durbin said you lose muscle control and Gary not once in the video I saw from the other camera lost muscle control.* * * Also, Your Honor, when I went downstairs to get changed out I took a look at the cameras downstairs and you can see in that cell from the other camera. Lieutenant Poe lied on that stand and he showed me the video that you can see Gary Lunsford protecting himself and protecting my punches. But, you can't see that in the video we saw here. But he deleted if for that very same reason, he didn't want you guys to know that Gary was not ever knocked out, that is a lie born by the prosecution. And I don't know who deleted that video but whoever did is guilty of destruction, tampering with records, tampering with evidence and Lieutenant Poe is guilty of perjury.* * * And if you want yourself you can go downstairs and look at that camera, you can see in that cell. And the video that Lieutenant Poe showed me you can see Gary protecting hisself (sic), but at the angle we saw here you can't see Gary protecting hisself (sic), and that's why they chose that one over the other one."
{¶ 98} In Fox, we held that for missing videotape footage to constitute materially exculpatory evidence, the defendant must present evidence that the missing footage captured the events at issue and would allow him to challenge the substance of the allegations, not merely the facts that occurred before or after the events at issue. If no one has reviewed the videotape, a defendant will generally be unable to show that the missing footage contained materially exculpatory evidence. Fox, supra, at ¶ 38. While defense counsel's argument on appeal is that the requested surveillance footage would be materially exculpatory as to the kidnapping count, Appellant indicated at sentencing the materially exculpatory footage somehow exonerates him as to the felonious assault conviction. Based on the record before us, the facts demonstrate that no one seems to know what was on the alleged materially exculpatory surveillance footage. And, taking Appellant's statements at sentencing as truthful, that he saw the alleged materially exculpatory footage that was later unavailable, any evidence of Lunsford, the victim "protecting himself and protecting [Appellant's] punches," is irrelevant to Appellant's guilt on either the felonious assault or kidnapping counts.
{¶ 99} Based upon the foregoing, we find the requested surveillance footage was *31 not materially exculpatory. Appellant cannot show the missing footage provides evidence which exonerates him or in any way challenges the substance of the allegations. Furthermore, in the event the surveillance footage could be somehow considered potentially useful, there has been no showing of bad faith. To establish bad faith, a defendant must show more than an accidental erasure of the tape or that the tape was reused in accordance with routine procedures. Fox , supra , at ¶ 38 (Internal citations omitted.) Based upon our de novo review of this matter, we agree with the trial court's rulings.
{¶ 100} We now turn to Appellant's argument in assignment of error five, that this presence was required at the October 31, 2016 motion hearing. Section 10, Article I of the Ohio Constitution states, "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." See State v. Lawwill, 8th Dist. Cuyahoga No. 88251, 2007-Ohio-2627, 2007 WL 1559563, ¶ 60. "A criminal defendant has a federal and state fundamental due process right to be present at all critical stages of his trial, absent a waiver of rights or other extraordinary circumstances." State v. Drummond, 7th Dist. Mahoning No. 05-MA-197, 2006-Ohio-7078, 2006 WL 3849295. (Internal citations omitted.) See also Crim.R. 43(A). In State v. Cannon, 9th Dist. Summit Nos. 17549, 17532, 1996 WL 752291, *4, the appellate court observed:
"[T]he right of a defendant to be present at the critical stages of his trial is violated only where 'a fair and just hearing * * * [is] thwarted by his absence." ' Id., quoting Snyder v. Massachusetts , 291 U.S. 97, 108 [54 S.Ct. 330, 78 L.Ed. 674], (1934). [A] defendant's presence is required where 'it bears, or may fairly be said to bear, a relation, reasonably substantial, to his opportunity to defend.' * * * '[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence.' State v. Howard , 57 Ohio App.2d 1, 5, 385 N.E.2d 208 [308] (1st Dist.1978) quoting Snyder v. Massachusetts , 291 U.S. 97, 106 [54 S.Ct. 330, 78 L.Ed. 674] (1934)."
{¶ 101} The Lawwill court noted the Supreme Court of Ohio found that where the following three factors were satisfied, any error as a result of defendant's absence is harmless:
"First, where the court found that the defendant's interests were more than adequately protected by his attorney who was present. * * * Second, the court found that his presence would have contributed little. * * * Third, the court found that his failure to timely object constituted waiver of the argument * * *." State v. Drummond, supra , citing State v. Williams , 6 Ohio St.3d 281, 452 N.E.2d 1323 (1983).
{¶ 102} Lawwill argued he was denied due process of law and his right to a fair trial when he was not present in open court during questioning regarding a juror's familiarity with the investigating detective in Lawwill's case. The Lawwill court ultimately concluded at ¶ 65 :
"Lawwill's counsel was present during the hearing along with prosecution. The entire hearing was conducted on the record. A review of the record demonstrates that Lawwill's interests were more than adequately protected. A review of the transcript also reveals that Lawwill's presence would have made little contribution to the hearing at issue. Further, Lawwill failed to timely object, thus constituting waiver of the argument."
Consequently, the Lawwill court declined to find plain error.
*32 {¶ 103} In this case, we must consider whether Appellant was deprived of a fair and just hearing on the motion to dismiss by his absence. Essentially, Appellant argues the trial court had a duty to hear his testimony on the issue of the additional surveillance footage and its value to his defense. We have carefully reviewed the record in its entirety and based on it, we disagree with Appellant, that his presence was required at the motion to dismiss hearing.
{¶ 104} The record reflects the trial court raised the issue of when Appellant should be returned from the state prison to Adams County for the purposes of trial at the final pretrial on October 6, 2016. Defense counsel requested Appellant's return for the Friday prior to trial. The trial court advised, since trial was to begin on Monday, November 7, 2016, that it would order Appellant's conveyance to occur on the 3rd or 4th of November. However, Appellant thereafter subpoenaed specific surveillance footage on October 14, 2016 and filed a motion to dismiss based on the failure to provide the footage on October 27, 2016.
{¶ 105} At the October 31, 2016 hearing on the motion, the trial court immediately addressed the issue of Appellant's absence. It is clear the court felt compelled to proceed with the hearing, when it stated, "I know of no other means of preparing counsel for the matters in the event that it does proceed to trial other than to proceed without the defendant." The court then asked if the attorneys wished to be heard on the issue. Both defense counsel and the State's counsel declined further discussion about Appellant's presence.
{¶ 106} Based on the evidence contained in the record before us, Appellant's argument that he was deprived of his constitutional and procedural rights to confrontation by his absence at the October 31, 2016 hearing has no merit. The record supports these findings: (1) that Appellant's interests were adequately protected by his counsel; (2) that Appellant's presence would have contributed little; and (3) that the failure to timely object constitutes a waiver of this argument.
{¶ 107} We find that while Appellant's counsel has zealously argued that the alleged materially exculpatory surveillance footage contained evidence which challenged the substance of the kidnapping count, the record reflects, as set forth in detail above, had Appellant been present at the October 31, 2016 conference, he may have made a quite different argument which would not have contributed to his defense. Based on the foregoing, we find no merit to Appellant's fifth assignment of error. It is hereby overruled.
ASSIGNMENT OF ERROR SIX
{¶ 108} In this assignment of error, Appellant argues the trial court foreclosed his cross-examination of Lieutenant Poe at trial regarding his failure to preserve all the video surveillance footage and this limitation violated Appellant's federal and state constitutional right of confrontation. At trial, the prosecutor objected to defense counsel's attempt to cross-examine Lieutenant Poe about the missing and allegedly relevant surveillance footage. The trial court sustained the objection.
{¶ 109} Appellant contends he still retained a right to cross-examine Lieutenant Poe regarding this subject in the jury's presence for purposes of challenging the completeness of the video footage that was offered into evidence, its value as collaborative evidence, and the integrity and thoroughness of the investigation. He argues denial of the opportunity to cross-examine on this issue violated his right of confrontation and right to present a complete defense. Appellant asserts the jurors were *33 left with the false impression that the surveillance footage contained the only relevant images.
STANDARD OF REVIEW
{¶ 110} A defendant's right to cross-examine the State's witnesses is guaranteed by both the Confrontation Clause of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. State v. Martin, 5th Dist. Delaware No. 14CAA030016, 2015-Ohio-1106, 2015 WL 1331818, ¶ 65 ; Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) ; State v. Self, 56 Ohio St.3d 73, 78, 564 N.E.2d 446 (1990). As a general rule, cross-examination is permitted "on all relevant matters and matters affecting credibility." Evid.R. 611(B). The scope of cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. State v. Slagle, 65 Ohio St.3d 597, 605, 605 N.E.2d 916, 925 (1992). This exercise of discretion will not be reversed in the absence of a clear showing of an abuse of discretion. Id.
{¶ 111} However, when a defendant challenges a trial court's limitation on cross-examination on appeal, the standard of review turns on the nature of the limitation. State v. McKelton, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 172. "Limitations * * * that deny a defendant 'the opportunity to establish that the witnesses may have had a motive to lie' infringe on core Sixth Amendment rights" and are reviewed de novo. (Emphasis sic.) State v. Gonzales, 151 Ohio App.3d 160, 2002-Ohio-4937, 783 N.E.2d 903, ¶ 45 (1st Dist.), quoting United States v. Nelson, 39 F.3d 705, 708 (7th Cir.1994). To establish a confrontation violation, one must show that he was "prohibited from engaging in otherwise appropriate cross-examination." McKelton, supra, quoting Delaware v. Van Arsdall , 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).
LEGAL ANALYSIS
{¶ 112} As set forth above, Evid.R. 611(B) provides that "Cross-examination shall be permitted on all relevant matters and matters affecting credibility." Id. Potts, ¶ 73. The pertinent portion of Lieutenant Poe's cross-examination is as follows:
Q: You are responsible as you testified to keeping all of the footage, correct?
A: Yes.
Q: And the footage that we looked at here that is what you kept?
A: Yes.
Q: You didn't keep anything before the 18th of June?
A: No.
Q: And didn't keep anything after the 18th of June?
A: No.
Q: So just the footage that Miss Harris and I have?
A: What was provided to the Prosecutor's office is what I downloaded.
Q: And you did not feel it was a good idea to keep the remaining-
Ms. Harris: Objection.
The trial court thereafter conducted this side bar conference:
Ms. Harris: Your Honor, just that this line of question and this topic has already been ruled on * * *. The State was previously barred from using testimony outside the video.
Mr. Cantrell: I was just asking whether or not he kept anything else.
The Court: Well, you asked him that and he answered that.
Mr. Cantrell: Okay.
*34 The Court: Seems like you are trying to go around the Court's orders.
Mr. Cantrell: I didn't mean it that way, I was just wanting to get that out.
The Court: How else would it have been determined?
Mr. Cantrell: I wasn't trying to get in what was on the video, but that they just didn't keep it.
The Court: He answered that. I'll sustain the objection.
{¶ 113} In opening, defense counsel planted the idea the jury should cast doubt on the completeness of the footage. Counsel stated in opening:
"You will likely see some video footage as you can imagine a jail cell is under constant video surveillance. All the allegations are to alleged to have been in that jail cell, any actions occurred in that jail cell. You'll see some video footage approximately consisting of about 157 minutes. That's all the video footage that was ever retained or kept from that jail cell. We have all these five crimes, three of which being kidnappings, one felonious assault and one assault, but they didn't manage to keep any of the video footage that alleged show these things."
Then, in closing, defense counsel emphasized as follows:
"Mr. Poe testified that there was only around 157 minutes of footage, he was the one that decided what to keep. He didn't keep any more. He did talk about how they only retain footage for so long but he got footage of the 18th, he didn't get anything on the 19th when Mr. Lunsford was allegedly confined to his bed. There was no footage of that. Nor was there footage of anything prior, we didn't have any of that, it wasn't kept."
{¶ 114} Based upon our review of the transcript, we find no confrontation clause violation by the trial court's sustaining the objection and not allowing defense counsel to question Lieutenant Poe as to whether or not he "did not feel it was a good idea to keep the remaining [footage.]" First, Appellant was not foreclosed from appropriate cross-examination. If a trial court allows cross-examination to expose a motive to lie, then "it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that point home to the jury." McKelton, quoting Nelson at 708. Under those circumstances, the extent of cross examination is within the sound discretion of the trial court. McKelton, supra, citing State v. Freeman, 7th Dist. Jefferson No. 07JE5, 2008-Ohio-2925, 2008 WL 2425532, ¶ 12. Similarly, since defense counsel was able to plant the idea in opening that the surveillance footage was suspect, and present through cross-examination that Lieutenant Poe did not give the prosecutor's office any video footage before and after the June 18, 2016, and the jury was able to draw their own conclusions from that testimony, it is within the trial court's discretion how much more counsel got to advance that point. At sidebar, defense counsel argued he was only trying to question whether or not he kept any other footage and the trial court found that question had been asked and answered.
{¶ 115} More importantly, we find the question as to whether or not Lieutenant Poe "felt it was a good idea to keep remaining [footage]" to be an unfair question, which could have caused confusion, given the fact of the trial court's ruling that there was no bad faith on the part of the officer's in not providing additional footage. The trial court ruled the footage not provided was not materially exculpatory nor potentially useful and there had been no bad faith as it was no longer available due to routine procedures. In *35 doing so, the trial court was required to make a legal analysis. Had the court allowed the defense counsel to continue with the line of questioning, both parties may have engaged in further questioning which may necessarily have involved consideration of legal conclusions or extrinsic matters. We are mindful that " '[a] trial court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, * * * or interrogation that is repetitive or only marginally relevant." ' " State v. Potts, 2016-Ohio-5555, 69 N.E.3d 1227 (3rd Dist.), ¶ 76. (Internal citations omitted.)
{¶ 116} Additionally, there is no evidence in the record that Lieutenant Poe made any conscious determination to keep or not to keep the requested footage. The only evidence of a "motive to lie" in the record is Appellant's self-serving statement on the record that Lieutenant Poe showed him surveillance footage which helped his case and then destroyed it. Given the finding of no bad faith, the jury was not left with a false impression by the court's ruling, as it would have been if Appellant had been allowed to continue with a line of questioning insinuating that Lieutenant Poe actively took steps to prevent the jury from seeing additional surveillance footage.
{¶ 117} We find Appellant's federal and state constitutional rights to confrontation of witnesses was not foreclosed and he was not prohibited from engaging in otherwise appropriate cross-examination. As such, we find no merit to the sixth assignment of error. Accordingly, it is hereby overruled.
ASSIGNMENT OF ERROR SEVEN
{¶ 118} Appellant next asserts his attorneys committed multiple errors that deprived him of his Sixth and Fourteenth Amendment rights to the effective assistance of counsel. Appellant maintains ineffective assistance occurred in that his counsel failed to insist on his presence at the hearing on the motion to dismiss; his counsel did not raise and argue the doctrine of impossibility as to the second kidnapping count; his counsel failed to make a motion to dismiss the second kidnapping count on the ground that the alleged conduct was covered by a more specific coercion statute; and his counsel failed to object to the incomplete and misleading complicity instruction. For the following reasons, we disagree.
STANDARD OF REVIEW
{¶ 119} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. State v. Wright, 4th Dist. Jackson No. 16CA3, 2017-Ohio-8702, 2017 WL 5664766, ¶ 44, quoting State v. Dukes , 4th Dist. Scioto No. 16CA3760, 2017-Ohio-7204, 2017 WL 3446816, ¶ 67 ; McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), fn. 14. (Internal citation omitted.) To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). (Internal citations omitted.) "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." State v. Conway, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure *36 to establish either element is fatal to the claim." State v. Jones , 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, 2008 WL 613116, ¶ 14.
{¶ 120} "When considering whether trial counsel's representation amounts to deficient performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " Wright , ¶ 45, quoting Dukes , supra , at ¶ 68, quoting State v. Walters, 4th Dist. Washington Nos. 13CA33 & 13CA36, 2014-Ohio-4966, 2014 WL 5798345, at ¶ 23, quoting Strickland at 689, 104 S.Ct. 2052. "Thus, 'the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " Id. "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." State v. Taylor , 4th Dist. Washington No. 07CA11, 2008-Ohio-482, 2008 WL 343328, ¶ 10 ; citing State v. Smith , 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). "Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment." Walters at ¶ 23, quoting State v. Gondor , 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62, and State v. Hamblin, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).
{¶ 121} "To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different." Wright at ¶ 46, quoting Dukes at ¶ 69. See State v. Bradley , 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), at paragraph three of the syllabus. "Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated." Walters at ¶ 24. "There are countless ways to provide effective assistance in any given case; therefore, judicial scrutiny of counsel's performance must be highly deferential." Id. (Citations omitted).
B. LEGAL ANALYSIS
1. Failure to insist on Appellant's presence at the hearing on the motion to dismiss.
{¶ 122} In the fifth assignment of error, we found no plain error occurred by Appellant's absence at the motion to dismiss hearing. At sentencing, Appellant's statement on this issue, previously set forth herein, demonstrated not only that Appellant admitted to assaulting Gary Lunsford, but also that Appellant's argument about the alleged missing video was meritless. Appellant stated that the alleged missing video showed Lunsford "protecting himself and protecting my punches." Any evidence of Lunsford protecting himself at some point before or after the assault which was represented on the surveillance footage is irrelevant to the analysis of Appellant's guilt as to his kidnapping conviction, as argued by his counsel on appeal. Moreover, surveillance footage showing Lunsford protecting himself from Appellant's punches is certainly irrelevant to Appellant's guilt as to the felonious assault conviction.
{¶ 123} Here, even if defense counsel was aware that the sentiments Appellant made at sentencing were likely to come out if Appellant testified at the motion to dismiss hearing, defense counsel made a wise strategic decision not to insist on his client's presence. "An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic." State v. Brown, 2017-Ohio-7424, 96 N.E.3d 1128, ¶ 21, quoting *37 State v. Patterson, 2nd Dist. Greene No. 2015-CA-57, 2016-Ohio-2750, 2016 WL 1730000, ¶ 15, citing State v. Brown, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). Appellant's accusations that Lieutenant Poe allegedly destroyed or tampered with footage that showed Lunsford protecting himself, and that such footage, if it existed, is somehow relevant or exonerates Appellant on one or both counts, is not rational conclusion.
{¶ 124} Based on the above, we find counsel's representation was not deficient due to his failure to object to Appellant's absence at the motion to dismiss hearing.
2. Failure to raise and argue the doctrine of impossibility as to the second kidnapping count.
{¶ 125} As we discussed at length in the second assignment of error, Appellant's doctrine of impossibility argument has no merit. Nothing in the research has indicated that Appellant's victim had no right to move about freely in his jail cell or that, as a general rule, an inmate cannot be held captive by other inmate in a jail or prison cell. Furthermore, the committee comments demonstrate that it is possible to kidnap a person by restricting their movement for only a short distance and if only for a brief period of time. Appellant's counsel can hardly be deemed ineffective for failing to advance a fruitless argument. See State v. Lytle , 4th Dist. Ross No. 96CA2182, 1997 WL 118069, (Mar. 10, 1997), *6.
3. Failure to make a motion to dismiss the second kidnapping count on the ground that the alleged conduct was covered by a more specific statute.
{¶ 126} Again, having reached our conclusion in assignment of error two, we do not find Appellant's counsel was deficient for failing to make a motion to dismiss the second kidnapping count based on the argument that Appellant's conduct was covered by the more specific coercion statute. Based on the above analysis, such an argument would have also been without merit. Defense counsel was not deficient for failing to make a motion which had no merit and would have been denied.
4. Failure to object to the complicity jury instruction.
{¶ 127} Appellant argues his counsel's representation was deficient due to a failure to object to the complicity jury instruction. In our discussion of assignment of error three above, we found no plain error occurred due to the failure to object to the complicity instruction given. We also do not find Appellant's counsel was deficient for failing to request clarification of the instruction.
{¶ 128} "Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel." State v. Rizer, 4th Dist. Meigs No. 10CA3, 2011-Ohio-5702, 2011 WL 5299484, ¶ 37, quoting In re Wingo, 143 Ohio App.3d 652, 668, 758 N.E.2d 780 (4th Dist.2001), citing State v. Carter, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Often times, with respect to "lesser-included offenses," defense counsel will make the strategic decision not to request a lesser-included offense jury instruction in the hopes that the jury will outright acquit the defendant on the charged offense, having not been given the option to find guilt as to the lesser-included offense.
{¶ 129} Appellant argues that the complicity jury instruction was incomplete and misleading. However, it could be considered reasonable trial strategy to go for "all or nothing," taking the chance that jurors would be confused and the confusion would result in an outright acquittal on the felonious assault and/or kidnapping counts. Given that Appellant was not charged with *38 complicity nor was he specifically identified using the language "principal offender," yet there was evidence of complicity, we find counsel's silence as to the incomplete complicity instruction to be a debatable, yet reasonable trial strategy. As such, we do not find counsel's performance to be deficient in this regard.
{¶ 130} Based upon the foregoing, we do not find Appellant's trial counsel's performance fell below an objective level of reasonable representation. Because Appellant has failed to establish this first prong of the Strickland test, his claim of ineffective assistant has no merit. As such, we overrule the seventh assignment of error.
ASSIGNMENT OF ERROR EIGHT
{¶ 131} Appellant asserts that the trial court unlawfully ordered that the prison terms imposed in the case be served consecutively to the prison terms imposed in his earlier case in order to punish him for refusing a plea bargain and for exercising his constitutional right to trial. Appellant points to the sentencing transcript which indicates the Judge's prior knowledge and involvement in the plea negotiations. The trial court had earlier indicated he would impose a concurrent sentence but Appellant declined to enter pleas. Appellant argues this also creates the appearance of impropriety which should be avoided.
STANDARD OF REVIEW
{¶ 132} R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either that "the record does not support the sentencing court's findings" under the specified statutory provisions or "the sentence is otherwise contrary to law." State v. Dukes, 4th Dist. Scioto No. 2017-Ohio-7204, 2017 WL 3446816, ¶ 83. See also State v. Brewer, 2014-Ohio-1903, 11 N.E.3d 317, ¶ 33 (4th Dist.).
LEGAL ANALYSIS
{¶ 133} It is axiomatic that "a defendant is guaranteed the right to a trial and should never be punished for exercising that right." State v. Morris, 159 Ohio App.3d 775, 2005-Ohio-962, 825 N.E.2d 637 (4th Dist.), ¶ 12, quoting State v. O'Dell , 45 Ohio St.3d 140, 543 N.E.2d 1220 (1989), at paragraph two of the syllabus. Any increase in the sentence based upon the defendant's decision to stand on his right to put the government to its proof rather than plead guilty is improper. State v. Scalf , 126 Ohio App.3d 614, 621, 710 N.E.2d 1206 (8th Dist.1998) ; Columbus v. Bee , 67 Ohio App.2d 65, 77, 425 N.E.2d 409 (10th Dist.1979). If courts could punish defendants for exercising their constitutional right to a jury trial, the right would be impaired by the chilling effect. Scalf at 621, 710 N.E.2d 1206 ; see also North Carolina v. Pearce , 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). This prohibition on increased punishment applies "no matter how overwhelming the evidence of [defendant's] guilt." Scalf at 621, 710 N.E.2d 1206, quoting United States v. Derrick (C.A.6, 1975), 519 F.2d 1, ¶ 3.
{¶ 134} "[A] sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law." State v. Taylor , 2017-Ohio-4395, 93 N.E.3d 1, ¶ 23, quoting State v. Rahab , 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 8. (Internal citations omitted.)
{¶ 135} In addition, a court must avoid creating the appearance that it enhanced a defendant's sentence because he elected to go to trial. Morris, supra , at ¶ 13 ; Scalf, 126 Ohio App.3d at 621, 710 N.E.2d 1206 ;
*39 United States v. Hutchings (C.A.2, 1985), 757 F.2d 11, 14 ; United States v. Stockwell (C.A.9, 1973), 472 F.2d 1186, 1187. When the court makes statements that "give rise to the inference that [the] defendant may have been punished more severely because of his assertion of the right to trial by jury," we must vacate the sentence ( State v. Hobbs , 8th Dist. Cuyahoga No. 81533, 2003-Ohio-4338, 2003 WL 21954778, ¶ 71 ), unless the record also contains an unequivocal statement that the defendant's decision to go to trial was not considered in imposing the sentence. Scalf, 126 Ohio App.3d at 621, 710 N.E.2d 1206, citing Hutchings, supra .
{¶ 136} At sentencing, the State requested the trial court consider imposing the maximum sentence, a total of 19 years combined, on counts two, felonious assault, and four, kidnapping. The State also requested those sentences ordered to be served consecutive to each other and consecutive to the prison term that Appellant was currently serving. The State pointed out the offenses Appellant was convicted of occurred while he was incarcerated awaiting trial. Based on Appellant's criminal history, the State argued that consecutive sentences were necessary to protect the public from future crime and to punish Appellant for his offenses. Appellant's counsel responded by pointing out Appellant was already serving three mandatory prison terms of 10 years to life, to be served consecutively, and that adding 19 years on top of that was excessive. Counsel argued "I'm not sure how much more protected the public can be."
{¶ 137} Appellant also given the opportunity to speak on his own behalf. We have set forth a long portion of Appellant's comments at sentencing, infra. At sentencing, Appellant wished to emphasize that he had seen a video that showed the "assault [he] committed on Mr. Lunsford, * * * not at an angle as [seen] in trial." Appellant also emphasized "We have not one witness who was there who is not a criminal." He reiterated that Lunsford could be seen on the alleged missing surveillance footage "protecting himself, and protecting [Appellant's] punches."
{¶ 138} Ultimately, the trial court imposed a stated prison term of six years on Count 2, felonious assault, and a stated prison term of six years on Count 4, kidnapping. The terms of incarceration were to run consecutive to each other.[6] Furthermore, the court ordered that Appellant's consecutive sentence on Counts 2 and 4 be served consecutively to his term previously imposed felony sentence.
{¶ 139} This colloquy between the trial court and Appellant sheds some light on the trial court's thoughts on the issue of sentencing:
THE COURT: I guess, Mr. Blanton, you have theorized that there wasn't serious physical harm because he didn't lose consciousness, is that your theory? * * *
Mr. Blanton: Yes, Your Honor.
The Court: Why does Mr. Lunsford have to protect himself at all? You're talking about, you're showing the other tape would have shown him in a defensive position protecting himself as you were pummeling him and getting back up when he did get up. Why does he have to protect himself at all?
Mr. Blanton: Can I give you one more aspect, Your Honor?
*40 The Court: Sure, if you would like to answer the question first though, why does he have to protect himself at all?
Mr. Blanton: He doesn't have to, Your Honor.
The Court: But you forced that upon him?
Mr. Blanton: I guess, Your Honor.
The Court: And your argument is he just didn't pass out?
Mr. Blanton: He was never unconscious, Your Honor.
The Court: I understand that is your position. You had another statement you wanted to make?
Mr. Blanton: Yes, Your Honor. * * * After investigating the crime Lieutenant Poe * * * later moved me from the cell, and all this would have been on video if he would have saved the video. * * * But, they put me back into that cell with [Gary Lunsford], he allowed that, he didn't say, look, I'm scared of him, keep him out of here, now this is when the situation already came to light. * * * Gary allowed them to put me back in there and we were actually hugging, I apologized to him, we were crying. There was no me being a bully and all those inmates and that would have been on camera, but mysteriously the camera is gone, Your Honor. * * *
{¶ 140} Appellant cites the following comments by the trial judge in support his argument that he was punished for exercising his right to jury trial. The trial court stated:
"All right. Well, and I realize that you don't practice law, but there is such a distorted view as to the law and the theories that because you hugged him after you had beat him savagely that somehow that wipes the slate clean. * * * You know, one of the things that is so perplexing is that the Court rarely participates in plea negotiations (emphasis added) because of the gratuitous nature of the plea negotiations you were offered almost an opportunity what I would call no harm no foul, * * * and you could have pled and no additional sentence compared to what you have. And somehow in your justification you decide that no, you want to challenge all of this knowing videotape is out there that just showed savage beatings, but that was your call. I do agree with Mr. Kelley that you were the least culpable of the three actors. And it broke my heart to watch your mother see her son violently attack animalistic a helpless individual. * * * When I watch what you and Mr. McKee and Mr. Michael did in that cell and the fear that you placed, when I considered how would I be, would I still not genuflected at the altar of fear, and I think I would have by this brutality. * * * But you know what I was really hoping you would say. I was afraid of them, that is the reason I did all this, they were threatening they were going to hurt me, and that's the reason I did all this. But you don't offer that, you don't offer anything of that nature. And so it was an independent act, a collective act as well that you decided to terrorize a whole cell of individuals. And the last thing I would say is that you were awaiting trial on charges that carried as you now know very serious penalties, and you knew at that time * * *. That other act happened * * * on or about February 22, 2016, less than four months pass and you're engaging in violent criminal behavior in a jail cell that you know there are videos. * * * That didn't seem to affect you. You just continued on with your beating of helpless individuals and your manipulation and threats of helpless individuals."
{¶ 141} Upon rendering the sentence, the trial court stated that it had considered *41 R.C. 2929.14 and found that the consecutive sentence was necessary to protect the public from future crime. The court further found that consecutive sentences are not disproportionate to the seriousness of the Appellant's conduct. When the court reached the R.C. 2929.14(C)(4) factors, the court stated:
"I have sentenced a lot of people, you apply on all of these. The court found that (a) Appellant had committed one or more of the multiple offenses while he was awaiting trial; (b) that the multiple offenses were part of a course of conduct; and that the offenses Appellant committed were so great or unusual that no single prison term for any of the offenses committed as part of the course of conduct adequately reflects the seriousness of his conduct. (c) And the third factor the Court finds that your history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender? * * * So the Court finds all of those factors and justifies, at least in the Court's self-serving mind on that matter that consecutive sentences are necessary."
{¶ 142} The trial court further remarked:
"I guess what I found most alarming, Mr. Blanton, and I didn't catch it because I've got a small screen up here, but in closing argument when they played, poor Mr. Lunsford, which I believe was unconscious * * *. But when he tries to get up that wasn't good enough for you. So, you savagely beat him some more. For what reason? For what good?"
{¶ 143} Importantly, in concluding the sentencing, the Court commented:
"Now before I tell you your appellate rights I just want to explain something because you're not involved in law. A Court of Common Pleas we have no investigatory powers. So all of your complaints about these other people that committed crimes the only way I can involve myself is if they are brought to court and indicted for those charge. (Sic.) So I don't want you to think it's fallen on deaf ears that I can do some investigation. I can't. * * * I have to wait until the evidence is presented in this courtroom with charges. I saw the videotape for the first time today as did the jury or for the first time maybe yesterday as did the jury." (Emphasis added.)
{¶ 144} In this case, we do not find the record supports the conclusion that Appellant was punished for exercising his right to a jury trial. We find the record here supports the imposition of consecutive sentences. We find the sentencing transcript reflects that the trial court explicitly made the required findings for consecutive sentences pursuant to R.C. 2929.14(C)(4)(a)(b) and (c). And, we further find Appellant's consecutive sentence is also not clearly and convincingly contrary to law.
{¶ 145} When sentencing an offender, each case stands on its own unique facts. Miller , supra, at ¶ 18 ; State v. McClain, 4th Dist. Pickaway No. 13CA17, 2014-Ohio-4192, 2014 WL 4749682, ¶ 38. (Internal citations omitted.)
{¶ 146} Here, the record reflects the trial court considered all the factors required of the applicable statute. We also find no appearance of impropriety due to simply noting that "the Court rarely participates in plea negotiations." The trial court could have imposed the maximum sentence on each count, but instead, imposed a lesser sentence of six years on each, well within the statutory range. Notably, the trial commented as to the three participants, Appellant was the "least culpable." The trial court's comments about *42 plea negotiations are part of the court's comments as a whole which reflect the court's grave concern about Appellant's violent conduct and apparent lack of remorse.
{¶ 147} For example the trial court also discussed the fact that the DVD the jury saw demonstrated Appellant participated in "savage beatings" and "violent attacks." The trial court had not seen the DVD until it was played for the jury. In particular, the trial court, along with the jurors, observed the victim, who appeared to be unconscious and tried to get up, being beaten again. And has been noted previously, Appellant's convictions for assault and kidnapping in the Adams County Jail occurred while he was awaiting trial for charges of kidnapping, assault and rape, for which he was eventually convicted. Taken together, these demonstrate Appellant's criminal history, danger to the public, and the seriousness of his course of conduct.
{¶ 148} For the foregoing reasons, we find the record clearly and convincingly record supports Appellant's consecutive sentences, and his sentence is not contrary to law. As such, we find no merit to Appellant's final assignment of error and it is hereby overruled.
CONCLUSION
{¶ 149} For the foregoing reasons, we find no merit to the arguments contained in Appellant's eight assignments of error. Accordingly, the assignments of error are overruled. The judgment of the trial court is affirmed.
JUDGMENT AFFIRMED.
Hoover, P.J. & Harsha, J.: Concur in Judgment and Opinion.

Appellant's judgment entry on sentence in this case indicates Appellant's prior felony convictions were in Adams County case number 20160037.

Mefford's testimony further corroborated that Appellant and the other two named inmates were in control of the jail cell:
Q: Did you feel when you were told to kick Mr. Lunsford did you feel that you had to do that?
A: I felt that if I didn't I would get the same.

See State v. Wells, 5th Dist. Stark No. 2009 CA 00168, 2010-Ohio-3126, 2010 WL 2643260, ¶ 27 (felonious assault statute "does not require a certain number of punches to be thrown to support a conviction, it only requires a showing that the offender caused serious physical harm"); State v. Smith, 4th Dist. Ross No. 06CA2893, 2007-Ohio-1884, 2007 WL 1165822 (affirming convictions for felonious assault and involuntary manslaughter caused by a single punch).

We further find the cases cited by Appellant to be inapposite. The specific holding of the Supreme Court of Ohio in State v. Nolan is that attempted felony murder is not a cognizable crime. In Liming v. Damos , in an appeal of issues arising from a civil contempt proceeding, the Supreme Court generally commented at 29 that the private interest involved in that case was the loss of personal liberty through imprisonment.

In Gerald, despite the application of the "hybrid" standard in State v. Fox, we held that we continue to apply a de novo standard of review, as in Lupardus, to a trial court's denial of a motion to dismiss on the ground that the State failed to preserve evidence. See Gerald , supra, at ¶ 15.

On Appellant's conviction in Count 5, it was ordered that Appellant serve 180 days in the Adams County Jail. This sentence was to be served concurrently to the sentence imposed in Counts 2 and 4.